IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MIDDLETON-CROSS PLAINS AREA SCHOOL
DISTRICT,

                                        Plaintiff,                         OPINION & ORDER

   v.

                                                                         16-cv-278-jdp

FIELDTURF USA, INC.,

                                      Defendant.

---

        In 2007, plaintiff Middleton-Cross Plains Area School District (the District) purchased a new, synthetic athletic field for Middleton High School from defendant FieldTurf USA, Inc. At the time, neither party knew that FieldTurf had manufactured the field with defective synthetic fibers. A few years later, FieldTurf learned that a number of its fields were prematurely deteriorating: customers complained, and independent testing confirmed the complaints. FieldTurf eventually sued—and settled with—the fiber manufacturer. FieldTurf never notified the District of the synthetic fiber's problems. In 2014, the District discovered that its field was prematurely wearing. The District sued FieldTurf for failing to repair or replace the field, in violation of the purchase agreement's express warranty, and for failing to tell the District about the defect fiber.

        Now FieldTurf has moved to dismiss one of the District's breach of contract claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 17. FieldTurf also asks the court to strike portions of the amended complaint, pursuant to Rule 12(f). The court will deny the motion in all respects.

ALLEGATIONS OF FACT

The court draws the following facts from the amended complaint, construing the allegations "in the light most favorable to [the District], accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

FieldTurf manufactures and sells synthetic grass turf fields. The District purchased one such field from FieldTurf in 2007. The purchase agreement provided that if the field "proves to be defective in material or workmanship, resulting in premature wear, during normal and ordinary use of the [Field] . . . within 8 years of the date of installation, FieldTurf will, at FieldTurf's option, either repair or replace the affected area without charge, to the extent required to meet the warranty period[.]" Dkt. 14, ¶ 19.

To make a somewhat long story short, between 2009 and 2011, FieldTurf learned that a synthetic fiber that it used to manufacture its fields, the "Evolution" fiber, was defective: customers complained that the fibers were prematurely splitting and shedding and that their fields were thinning and fading. FieldTurf independently determined that the Evolution fibers were indeed exhibiting premature and significant signs of physical and chemical degradation. FieldTurf eventually filed suit against the fiber manufacturer, TenCate. The parties reached a confidential settlement agreement. FieldTurf had used the Evolution fiber to manufacture the District's field, but FieldTurf did not notify the District of any problems with the Evolution fiber.

In August 2014, the District determined that its field exhibited deterioration well beyond normal wear and tear. The District notified FieldTurf, and FieldTurf investigated the District's claims. At no point during the investigation did FieldTurf notify the District of its

previous investigations, expert testing, litigation, or settlement regarding the defective Evolution fiber.

In November 2014, FieldTurf acknowledged that the District's field was showing "early signs of fiber degradation in the high traffic areas and slightly on the colored fibers." *Id.* ¶ 31. The District timely requested warranty relief, i.e., that FieldTurf repair or replace the field. As of the date of the amended complaint, FieldTurf has not honored its warranty obligations. Instead, FieldTurf has offered to *sell* the District a new field.

The District brings two contract claims against FieldTurf: (1) breach of the express warranty provisions for failing to repair or replace the defective field; and (2) breach of the implied duty of good faith and fair dealing for failing to disclose that it knew that the field's fibers were defective.

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000.

## ANALYSIS

### A. Motion to dismiss

FieldTurf contends that the District's breach of the implied duty of good faith and fair dealing claim impermissibly duplicates its breach of contract claim. FieldTurf has a point: a party cannot bring two breach of contract claims for a single breach. But FieldTurf misunderstands the District's claims. Although this *is* a straightforward breach of contract case, the District has alleged *two* distinct breaches.

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's legal sufficiency. To state a claim upon which relief can be granted, a complaint must provide a "short and

3

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

Under Wisconsin law, every contract contains an implied duty of good faith in its performance and enforcement. Wis. Stat. § 401.304; *see also Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203, 213 (Ct. App. 1995). A breach of the implied duty of good faith is a breach of the contract. *Foseid*, 541 N.W.2d at 212 ("[A] party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled."). Precisely what the implied duty of good faith requires is not easily defined. To put it generally, "[t]he implied covenant of good faith prevents parties to a contract from 'intentionally and purposely do[ing] anything to prevent the other party from carrying out his or her part of the agreement.'" *Non Typical Inc. v. Transglobal Logistics Grp. Inc.*, No. 10-cv-1058, 2011 WL 1792927, at *6 (E.D. Wis. May 11, 2011) (quoting *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis. 2d 752, 734 N.W.2d 169). The implied duty guards against conduct that would amount to "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d

791, 803 (W.D. Wis. 2006) (quoting *Foseid*, 541 N.W.2d at 213); *see also Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 595 (7th Cir. 1991) (The implied duty of good faith "forbid[s] the kinds of opportunistic behavior that a mutually dependent, cooperative relationship might enable in the absence of rule."). That said, conduct that the contract does not expressly prohibit may breach the implied duty, but conduct that the contract expressly authorizes or requires cannot. *See generally Uebelacker*, 464 F. Supp. 2d at 803. Whether a particular act or omission breaches the implied duty necessarily depends on the contract.

"Under Wisconsin law, to state a claim for breach of duty of good faith, a plaintiff must allege facts 'that can support a conclusion that the party accused of bad faith has actually denied the benefit of the bargain originally intended by the parties.'" *Id.* (quoting *Zenith Ins. Co. v. Emp'rs Ins.*, 141 F.3d 300, 308 (7th Cir. 1998)). But a plaintiff cannot simply repackage a breach of an express contractual provision as a breach of the implied duty of good faith. Wisconsin does not recognize an independent cause of action for a breach of an express contractual provision done in bad faith: a breach of the implied duty of good faith claim that duplicates a breach of contract claim is not separately actionable. *See All. Laundry Sys. LLC v. Eaton Corp.*, No. 13-cv-687, 2013 WL 5719011, at *5 (E.D. Wis. Oct. 21, 2013).

FieldTurf contends that this is exactly what the District is attempting to do here. FieldTurf argues that the District impermissibly uses one set of facts—one alleged breach—to support two claims. But FieldTurf mischaracterizes the District's allegations. The District alleges that FieldTurf breached the purchase agreement's express warranty. But the District also alleges that FieldTurf withheld information concerning material defects in the field's synthetic materials to prevent the District from making a warranty claim, in violation of its duty of good faith and fair dealing. Though the claims are undeniably related, the District has

alleged *two* breaches of the underlying contract. Count II is separately actionable. *See generally Mkt. St. Assocs.*, 941 F.2d at 594-95 ("Moreover, this is a contract case rather than a tort case, and conduct that might not rise to the level of fraud may nonetheless violate the duty of good faith in dealing with one's contractual partners and thereby give rise to a remedy under contract law."); *Betco Corp. v. Peacock*, No. 14-cv-193, 2015 WL 856603, at *15 (W.D. Wis. Feb. 27, 2015) (acknowledging breach of the implied duty of good faith and fair dealing as a valid legal theory).

The court will not now consider the merits of count II. Whether FieldTurf withheld information that it should have disclosed and whether thereby FieldTurf violated the implied duty of good faith are questions for another day. The District has stated a claim for breach of the implied duty of good faith, separate from its claim for breach of the express warranty.

**B. Motion to strike**

FieldTurf also moves the court to strike certain portions of the amended complaint. FieldTurf contends that: (1) allegations concerning FieldTurf's "proposals" to sell the District a new field actually discuss "offers to compromise," and the court should strike them pursuant to Federal Rule of Evidence 408; and (2) all allegations regarding the TenCate litigation are irrelevant.

Federal Rule of Civil Procedure 12(f) allows the court to remove material from a pleading that is "redundant, immaterial, impertinent, or scandalous." But courts generally disfavor motions to strike because they "potentially serve only to delay." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). As the moving party, FieldTurf must show "that the challenged allegations are so unrelated to the [District's] claim as to be

6

devoid of merit, unworthy of consideration, and unduly prejudicial." *Boehm v. Legends of the Field, LLC*, No. 15-cv-683, 2016 WL 2732202, at *1 (W.D. Wis. May 10, 2016).

FieldTurf first asks the court to strike two sentences that refer to post-warranty-denial proposals made by FieldTurf:

> Instead, FieldTurf has proposed that the District simply purchase a new field from FieldTurf, an astonishing proposal given FieldTurf's unambiguous warranty that it would repair or replace the [Duraspine Field] "without charge."
>
> . . .
>
> Instead of honoring its warranty obligation to repair or replace the defective Duraspine Field at no cost, FieldTurf has made several proposals to sell the District a new synthetic field surface, at a cost of over $350,000.

Dkt. 14, ¶¶ 8, 35. FieldTurf acknowledges that it made these statements but argues that they were "offers to compromise" and should be struck pursuant to Federal Rule of Evidence 408. The court is not persuaded. Rule 408 is an evidentiary rule that matters at trial, not at the pleading stage. *See, e.g.*, *Halbrucker v. Waste Mgmt. of Wis.*, No. 07-cv-11, 2007 WL 3125276, at *2 (E.D. Wis. Oct. 24, 2007) ("Rule 408 is a rule of evidence, not a rule of pleading, and the allegations of Halbrucker's complaint are not evidence.").

Regardless, courts should grant motions to strike only if there is no doubt about the challenged matter's irrelevance and prejudicial harm. *See, e.g.*, *MBI Acquisition Partners, L.P. v. Chronicle Pub. Co.*, No. 01-cv-177, 2001 WL 1478812, at *4 (W.D. Wis. Sept. 6, 2001) ("A motion to strike will be granted only in extreme circumstances where the challenged matter clearly has no bearing on the subject matter of the litigation and real prejudicial harm to the moving party is shown."). It is not readily apparent that these two sentences reference "offers to compromise." It seems more likely that the two sentences are being offered to show that

FieldTurf denied the District's warranty claim. The bottom line is that FieldTurf has not demonstrated that these sentences are wholly irrelevant or unduly prejudicial, and the court will deny this aspect of the motion to strike.

FieldTurf also contends that every allegation in the amended complaint that discusses the TenCate litigation is entirely irrelevant. But FieldTurf assumes that the court will grant its motion to dismiss count II. *See* Dkt. 18, at 13-14 ("The allegations regarding the prior lawsuit do nothing to support the District's claim that the Warranty was breached."). But, as discussed, the District has stated a viable claim for breach of the implied duty of good faith. And that claim relies on the fact that FieldTurf knew that the Evolution fiber was defective. Because the allegations relating to the TenCate litigation are not devoid of merit, unworthy of consideration, or unduly prejudicial, the court will deny this remaining aspect of the motion to strike.

ORDER

IT IS ORDERED that defendant FieldTurf USA, Inc.'s motion to dismiss and strike, Dkt. 17, is DENIED.

Entered October 31, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge